2-23-0526, people of the state of Illinois, plaintiff's counsel, D. Christopher R. Cummins, defendant's appellee. Arguing on behalf of the appellant, Ms. Lynn M. Hyren. Arguing on behalf of the appellee, Mr. Randy K. Johnson. Are you both ready to proceed? Okay, counsel, then, when you're ready. Good morning, your honors, counsel. May it please the court, my name is Lynn Harrington, and I represent the people of the state of Illinois. Your honors, the trial court absolutely erred here when it granted defendant's motion to suppress and rejected the people's contention that this was an exception to the warrant requirement via the emergency exception. In this brief, defendant uses the phrase over and over again that these are, the evidence presented at the hearing are mere hunches or what ifs. That is not the case. As the people set out in their opening brief and in their reply brief, and as they will demonstrate here today, there was a plethora of evidence introduced at that motion to suppress hearing such that the trial court manifestly erred in its factual determinations. And with that, your honors, before I go into the merits of the case, I'd like to briefly touch on the standard of review. Here, the standard of review for the trial court's factual findings are the manifest way to the evidence. However, it has long been held that it's the de novo standard of review and the ultimate decision of whether the motion to suppress was properly granted. And either way you look at it, your honors, the evidence will show that this was an incorrect decision. The emergency exception... One of the issues that I think we're all familiar with the facts, but one of the issues that seems to be troubling the defendant that they brought up several times in their briefs is this time period that was a half an hour. And speak to that. Why do you think that is not a prolonged period of time for what was going on at this home? Thank you, Justice Shastek, for that question. I was going to talk about this incredibly small amount of time. Defendant likes to say that this was an hour and 17 minutes. But it wasn't. Here's what we're looking at. At 2.30 in the morning the call comes in. Detective Wrenchler is on duty. So we don't know how long it took him to get there, but I think it's fair to say 10 minutes. So he gets there around 2.40. He pounds on all the glass that he can see for 20 minutes, not a long amount of time. And then he calls his supervisor, Sergeant Kuttner. Sergeant Kuttner would say it takes him 10 minutes to get there. So then we're looking at 3.10. The officer's going at 3.47. So you're looking at 37 minutes. And during that time they gathered a lot of evidence. And we don't get a lot of intel while we're outside. Exactly, Your Honor. Exactly. A lot of intel. Because here's what we know. When Detective Wrenchler got on the scene, what did he see and what did he hear? First of all, he heard music. And that loud is not even the word that you want to use. This music was so loud that the window panes were rattling. It's 2.40 in the morning. You've got this loud music going on. You've got the window panes rattling. You've got all the lights in the house, or at least the lights in the first floor are on. That's all he knows. And he sees the car in the driveway. However, as he starts his investigation, he talks to Mr. Heitzman. Mr. Heitzman provides invaluable evidence to this case that the trial court ignored. What does he say? He says, first of all, I know the guy that lives there. I've known him since he was a child. I know he moved in six months ago because that's when his father died. I know he has a drug conviction. And here's a really important part. I know he's got a drug habit. So he tells that to these officers. They're repeatedly trying to get this man's attention. They're calling every number that's associated with the house. They're pounding. When they get the invaluable evidence from Mr. Heitzman, they do a leads check. What do they find? Yes, he's right that he's got a drug conviction. Yes, what else does he have? He's got a vote for you card. And then the officers see the guns in the house. So based on all this information, at I believe around 3.20, about 3.20, 3.30, Sergeant Kuttner calls for backup. Because it would have been a very dangerous situation for these two officers alone to go into this house. They knew that this man had a drug habit. Anyway, I'd like to point your attention to the incorrect findings that the trial court made initially at the motion to suppress hearing. But like you said, the trial court didn't consider the drug information at all? Didn't really recite that in there? It did recite, Your Honor, it did recite the drug conviction. Yeah. But here's exactly what the trial court said. It said the initial call, the noise complaint, was not a well-being check. Well, who cares? That's neither here nor there. A lot of things happen after a noise complaint. You might find a dead body in the front yard. You don't know. That has nothing to do with the analysis of whether there was an emergency exception to the warrant requirement. So then you go on, and the court says, although Mr. Heitzman said that the defendant had a drug problem, quote, it received no other specific information other than the drug conviction in his background at some point. That's an escapement of the record. Right there. That's the key information that we found out, that this man was not clean and dry and had gone to the N.A. and he hadn't touched a drug since his last conviction, whatever the heck it was. And this wasn't this guy's first rodeo. Mr. Heitzman said he's constantly doing this in the middle of the night. He's blaring this music. The window panes are rattling. Now you can't get a hold of him. What is a reasonable conclusion from that? Let me ask you this. The police saw the guns inside the home. Correct, Your Honor. They knew he was a convicted felon. Correct. Why not get a search warrant at that point before entering? I mean, in today's day and age, with electronic communication, you can get a search warrant. Assuming there's a judge on duty, you're going to be able to get a search warrant within a matter of an hour, maybe? Well, like you said, Justice Brokamp, assuming that a judge is on duty first. But I think the more clear answer to that is they weren't worried about the guns. As things came, as they learned all this information from Heitzman, a common sense officer would say, oh, okay, either somebody's dead in there or they are so comatose from whatever substance that they might be under that they can't hear their dog constantly barking, the music that is so loud that the window panes are rattling. Is the music a legitimate concern for the police? Absolutely, Your Honor. Absolutely it's a legitimate concern. Why? Because that's how the call originated, because the neighbors can't sleep at 2.30 in the morning when this house is rocking so hard that the window panes are rattling. If it's that loud, then what purpose to bang on the door and yell and scream or even make phone calls? What's the probability that that would be heard over this incredibly loud music? Well, Your Honor, I think you start from the proposition that somebody is just disregarding the law, especially because we knew his background. We knew from Mr. Heitzman that he had a current drug problem. Maybe he didn't care what his neighbors thought. Maybe he was wide awake and listening to the music. So they justifiably had a knock on the door like, hey, buddy, open the door. Well, when you get to a certain point and you've investigated everything you possibly can, the most common sense answer is he's either dead or he's comatose. We've got to go in there. And if you look at – I also want to talk to the trial court's findings in its motion to reconsider, because those also are in error. After the hearing on the motion to reconsider, the trial court says, at that point this court finds it is possible there was an individual in the residence who did not want to answer the door as a resident has a right to do. It is possible at that point that there was no individual in the residence. Then it says either of those things are equally as likely. But I'm not dismissing the fact that it is possible that there may have been an individual in duress in some sort in the residence, but this court does not find that that information available to the officers outside the residence was sufficient. Your Honors, there's two big problems with this. First of all, as this court has had in Peeble v. Kaluznikoff, absolute servitude is not the standard here. The trial court literally conceded that it's possible that somebody was in need of help there. You can't Monday morning quarterback these officers who are looking at them in the time and place that they're looking at it. If they've got evidence, it seems way more likely that somebody's either dead or in duress, or really in duress is what we're looking at, that they had to go in there, versus he's just sitting in his house and saying, I'm not answering the door, or that he just left the house in the middle of the night with the music blaring, with the window panes rattling, with the dog barking. What's the more likely scenario? So there's two problems with that finding. Absolute servitude is not necessary, and the trial court itself said that it was possible. The defense makes some concern with the state of mind of the police officer, and the Supreme Court in Scott versus United States in Fisher talked about this state of mind of the police officer at the time. Is it objective or subjective? Your Honor, it has to be subjective, because it's in the course of what they do as an officer. You have to look at, based on the circumstances that they were looking at, they have to make a decision, and they have to make a huge decision. If they walked away from that house, this defendant could have died. We know that. We know that now from the search warrant, that it took 11 minutes to rouse this man. They had to do sternum rubs and everything else. So they're working in a very dangerous situation for themselves and for other people, and those decisions, if they're reasonable and they are, objectively or subjectively. Well, the subjective intent of the officers is irrelevant, isn't it? It's an objective analysis. That is correct, Justice Brokette. I guess the people are simply making the point that the officers have a very dangerous, difficult job. They need to make a reasonable determination based on common sense, and then, yes, you as a review in court, you look at it, and objectively, was it reasonable? Absolutely it was reasonable. As this court held only three years ago, People v. Kolesnikoff, it held that the emergency exception applied, and in that case, the defendant was already escorted out of the house. They had a picture of the driver's license. They could match the guy. They said there was no other sounds in the house, but this court properly found that they were allowed to go in there to see if there was anybody else. They had the picture of an individual in jeans and a large knife. They weren't looking for drugs, just like here. It was a very limited search, and the emergency exception absolutely applied. If there are no more questions, Your Honor, I can... When you were discussing or outlining a time frame, so you suggested that at 3.20, the sergeant, I believe, calls for backup, and then they enter at 3.47, so in that additional 27 minutes, anything happen? Any new information? It's my understanding from the testimony of the motions of the press hearing that this was an ongoing investigation. The sergeant and the detective can't say at 3.28... Right, that was my point, but you articulated the timeline. Correct. But it was very hazy as to the chronology of who learned what when, and so are you trying to clarify that with your timeline? No, Your Honor, I'm just simply saying that it was a very short timeline. It was a very short timeline, and there's no case law, and nor should there be, talking about, well, you know, 27 minutes is fine, 45, you're out, because you know why? You have to look at all the circumstances of each case, and what does the case law say? I guess it doesn't really matter, then, the time. Well, I mean, in this circumstance, it matters to show that they did everything that they possibly could, and when they finished gathering all their information and had called for backup, then they went into the house, and that's okay. There's a case that defendant cites about 30 minutes being too long, and the only reason the court said here, I'm sorry, Kester, 2003, there was a 30-minute delay, and they said the emergency exception didn't apply, but that's because they sat around and did nothing. They thought that the sister made a 911 call and then hung up. The brother answered the door and said, well, it probably was my sister. No, you can't come in, but they never said, can we speak to your sister? They just waited outside for 30 minutes, and then they went in. That's absolutely not what happened here, Your Honors. It was what was known to the officers at the time. At the time of entry, yes, Your Honors. And they acted absolutely appropriately, and under all the case law, this is an emergency exception to the warrant requirement. Well, I'm not going to talk about would have, could have, but I have no further questions. Any further questions? No, thank you. Okay, thank you, Your Honors. Good morning, Your Honors. Good morning. Counsel, my name is Randy Johnson. I represent Christopher Cummings in this matter. Your Honors, we start from the beginning. There's no more sacred place in the world, in this country, than a person's home. The inviability of a person's home has been the touchstone of the Fourth Amendment since it was adopted. You mentioned the sanctity of the home. What about the sanctity of the homes and the ability to sleep for the neighbor who was disturbed? I understand that, and my answer to that, Your Honors, is certainly there has to be balancing. There has to be what? I'm sorry. There has to be. There's always balancing. But in this case, the necessity and the requirements of the Fourth Amendment outweigh those particular concerns. And I would just respectfully point out.  So you're saying if my neighbor is blasting music at 2 o'clock in the morning, I just got to wake up and play solitaire? I mean, I can't call the police because they can't do anything? No. I can't go knock on my neighbor's door? No, I think a neighbor could do that every single time. I don't have a problem with that. Can I call the police? Absolutely. And can they do anything? Pardon me, Your Honor? Can they do anything about the music at 2 in the morning? They can, but they can't enter the home without a warrant. That's the problem. What about the trial court's comments during the hearing on the motion to reconsider where the trial court suggested, yes, it is possible there was somebody inside the residence. I mean, doesn't that show the court was confused about what is required in order to fill the probable cause? First of all, I don't think. Or an emergency? I don't think the trial court was confused. I think the trial court was simply making a discussion of the evidence and indicating that it was considering the evidence here. And under the standard, which we all know, I don't think that the trial court made an unreasonable or arbitrary finding that wasn't based on the evidence. So the standard here was met. And furthermore, these cases are somewhat sui generis. They're looked at on their own facts. Let me just point out, first of all, I made a typographical error on page 18 when I was citing the case of People v. Foskey in the Illinois Supreme Court case. I said it was decided in 1980. It was decided in 1990. But I would note for the court in Foskey, the court on page 76 talks about various factors that could be taken into account in assessing an exigency situation. One, whether the offense under investigation was recently committed. Well, I don't know what offense we're worried about, certainly not a drug offense that my client was convicted of years ago. Two, whether there was any deliberate or unjustifiable delay by the officers during which time a warrant could have been obtained. I want to respond to Mr. Justice Burkett. Yes, they could have made a phone call for a warrant, and they should have. Based upon what? Based on what? Ultimately, I think when they saw the gun cabinet. Through the window. Yes. And when they determined that my client didn't have a FOIA card. And as far as somebody trying to escape, there was no escape from this home. The states, basically the premises and the testimony appear to be, they were concerned that this individual might be inside and either comatose or dead. I understand that, Your Honor, but two things respectfully. And what about calling the nuisance that's going on, the ongoing nuisance? I don't dispute the idea about an ongoing nuisance. Well, how are they going to stop the ongoing nuisance if they don't get into the home to turn the music off? Your Honor, I don't think, I think that the inviolability of a person's home, regardless of them turning off music, takes precedence here. Let me, I'm going to run this by you and see what you think. This is from U.S. v. Rowing of 98 F. 3rd, 1506, Sixth Circuit Court. Basically the same facts as your neighbors complaining about loud music. The court said, Rather, by entering the defendant's residence for the limited purpose of locating and evading a nuisance, the officer sought to restore the neighbors' peaceful enjoyment of their homes and neighborhood. In view of the importance of preserving our communities, we do not think that the interest is so insignificant that it can never serve as justification for a warrantless entry into a home. I don't, I don't understand. That's what was going on here. In part, they were concerned about this individual, but also they've got neighbors who are not happy. They can't sleep. It's the middle of the night. I understand, Your Honor. Number one, they had absolutely no knowledge that there was anyone in this home. Well, the door. Irrespective of. They don't have knowledge, but they, I'm sorry. The door was ajar. The door was ajar. So is that a concern that somebody may have broke in? I mean. But there was no, I understand, and I don't dispute the fact that the door was ajar. As far as I grew up, the police would just go in and close the door. Because there was no indicia. The critical thing is not only is the car in the driveway, but the neighbor tells us, for his history with the last six months, when the car is there, he's home. I don't think. He said he thought he probably was home because it was his car. Because his car is there. Not because he owns it, but because it's present in the driveway, he's usually home. I understand. But so that is some evidence and indication that the defendant was likely home. It's some evidence. I understand, Your Honor. If I could just continue.  On these frosty terms, whether grave offenses involved, particularly one of violence. That wasn't the situation here. It was loud music. Whether the suspect was reasonably believed to be armed. Well, there was absolutely no indication of that whatsoever. Five, whether the police officer reacted upon a clear showing of probable cause. That simply isn't the case. And I would point out in Payton v. New York, footnote 29, or excuse me, footnote 24, the U.S. Supreme Court cites an earlier decision, I think it was by Justice Murphy. It was the justice that did the Nuremberg trials. It's a complete indication that determinations of probable cause are to be made by a neutral magistrate, not the police. And that is the bedrock principle of the Fourth Amendment. The police don't get to decide these things, whether or not they have probable cause out on the street. That's why we have a warrant requirement before people can get into a residence. Exigent circumstances. I mean, what were the underlying statuses in Foskey? I'm sorry, your Honor. Foskey, the case that you. Foskey was a murder case. Right. And it was not a case of the police being concerned about an individual inside the residence possibly being overdosing or comatose, right? No, it was a murder case. Let me ask you this. What's the consequence if the police just packed up at 347 and said, well, that's it, we don't have a warrant, and 2nd District has just said you can't go in the house, they all go home. Next morning, our defendant here is found dead on the couch. What liability falls on their head for their failure to act?  In this situation, I don't think any. And with all due respect, with what they knew, sometimes, and it has been true in history, there are some things that are more precious, including the protection of a home, than people's lives. And we just went through that in Memorial Day. And I certainly wouldn't fault the police one bit for making a telephone call, as previously suggested by Justice Burkett, to get a warrant. You don't cross that front doorstep without a warrant. That's an easy thing to say, but in situations where there is a suspicion of drug involvement, seconds matter, minutes matter. I understand, Your Honor, but apparently here, 77 minutes didn't matter. This was an hour and 17 minutes before they came in, and they didn't come in. When they came in, what did they find? How did they find the defendant? They found the defendant passed out. He drank too much. And of course, we know that we don't look at what happens after the entry to determine whether or not the entry was appropriate. Correct. As opposed to standing here quoting to you these Foskey elements, I just would ask the Court to at least take a look at them, because none of them really apply on page 75 of the Foskey. Foskey, they were investigating a murder. Yes, they were. They were not trying to save somebody inside the house. They were looking for the murderer or evidence of the murder, right? That's true. And just frankly, I don't know what the precipitating fact was that triggered, ultimately triggered the police to decide to go into this home without a warrant. Isn't the test in United States v. Scott, I think it is, or Michigan v. Fisher, the test is not what the officer believed, but whether there was an objectively reasonable basis for believing that medical assistance was needed or that somebody was in danger. So that's a little different than a murder when you say, gee, we've been knocking here. This music is loud. All the lights are on. The door's ajar. If somebody's in this house, they cannot be awake, or something has to be wrong. So I think, would you submit that at that point, that was what made them go into the house? I mean, That very well may have been the reason they decided to go into the house, but I don't think that it was an appropriate reason to go in without a warrant. You think it was unreasonable at that point? Absolutely. Okay. The time factor is very important here. They could have gotten a warrant. They could have put it in place. How do you know that? How do I know that? Yeah, it's 2 o'clock in the morning. How do we know they can get a warrant that fast? Well, I'd have to talk off the record, but I know very well that there's a judge on call in Kane County at 24 hours a day to get a warrant. It's not a problem that all the state's attorneys know how to reach the court. At some point in time, a police officer, a supervisor, or a sergeant who's on duty has to make a call, right? We go in or we don't go in. He had to make a call whether to go in or to get a warrant first. And the question of whether or not these officers were ever going to get a warrant was raised, and the officer was questioned on cross-examination. Well, did you ask or consider getting a warrant? No. So it was never considered. That's the problem. We can't allow a loud music exception to the Fourth Amendment, not to a person's home. This wasn't an automobile stop. This wasn't a stop in the street. This wasn't a terrorist stop. This was going into somebody's home. Based upon their objective belief that there was a medical emergency, potentially. I don't think that they had enough facts to determine that there was any medical emergency, and we wouldn't get to that point unless we look at it after the fact. But the trial court said that there was a possibility. There's possibilities for many things, but the number one thing that wasn't done here is they never considered calling to get a warrant. Just to be crystal clear here, you accept that there can be medical emergencies? Yes. Okay. But here your issue is that what was known to the police at 347, if I've got the time correct, was simply not enough to enter the home without a warrant. Absolutely. Okay. Thank you, Your Honors. Thank you. When you're ready. Thank you, Your Honors. I just have a few comments with regard to counsel's argument. It really sounded to me that he was acknowledging there was an emergency exception, but then saying it really doesn't apply ever. Why wouldn't he give us more? Well, I think he said it applied. There are times it applies. It just didn't apply here. Right. But I – what else would you possibly need? There was a plethora of evidence here. Well, but that's really not our prerogative. The question here is, was the evidence as testified to here enough? Hypothetically, what might be, what might not be in a future case is not for us to decide here. Absolutely, Your Honor. And you are correct. And you read the transcripts of the motion to suppress hearing. There was an overwhelming amount of evidence that objectively looking at it, these officers had a very reasonable basis that there was an emergency here, that somebody was obviously unconscious, because how could you possibly listen to the officers banging and the noise and the dog and everything else? It's just a common-sense conclusion. Like, there's a problem here, and we know he's a drug abuser, and we know he has a prior conviction, and we know that this is not the first time he's engaged in this sort of behavior, because Mr. Heitzman told us all that. He also told us that that's his car in the driveway. When his car is in the driveway, he's partying in there. They had all this to think, yes, there's a real problem here. And they went in, and they did an incredibly limited search. They didn't take anything out but the defendant himself, and they offered the aid that it was their job to do. And they probably saved his life. And under the case law, Your Honors, this was absolutely the emergency exception to the warrant requirement. There's a reason there are exceptions, and this is a perfect example of why the emergency exception is allowed for officers to go in if they have enough information at the time of entry and to make a limited search, which they did. Well, Counsel's point is that there was not enough evidence for the police to believe someone was in the house in dire straits. Correct, Your Honor, but as I mentioned, I'm not sure what else that Counsel is possibly looking for. At the same time, he argues two different things. He said there should be more, but then the time was too long. Well, if the officers went in after 10 minutes, he would have said, No, you can't just knock on the door for 10 minutes and go in. You need more.  They had more. They had more than enough, and they were right in their conclusion that somebody was in need of medical aid in that house. You cannot consider that. I know. You're right. You cannot consider that. You cannot consider that. But what you can consider is the trial court's finding on the record at the motion to reconsider saying, Yes, it's possible that somebody was in need of medical aid in that house. And as this Court has held in Kolesnikov, absolute certainty is not the standard because these police officers are not God. They don't know what they're going to find. What they do is they looked objectively at all the evidence they have, and they decide that they need to assist because that's their job. And they did a really, really good job here. And for that reason, Your Honor, the people respectfully request that this Court reverse the trial court's order granting defendants' motion to dismiss and remand for further proceedings.  Pardon? Motion to suppress. Motion to suppress, not dismiss. Thank you very much. Any additional questions? No. Anything else? Thank you both. Thank you, Your Honors. We will be in recess until our next case at 1130. I thank both counsels for exceptional arguments this morning.